# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ANDRES J. ACEVEDO,
     *Plaintiff*,

     v.                              No. 3:16-cv-1967 (JAM)

DEBBIE WILSON, *et al.*,
     *Defendants*.

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Andres J. Acevedo is confined at the Cheshire Correctional Institution. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Plaintiff names two defendants, Nurse Debbie Wilson and Dr. Ruiz. He seeks damages as well as declaratory and injunctive relief. After an initial review, the Court concludes that the complaint should be served on defendant Wilson; the claim against defendant Ruiz, on the other hand, will be dismissed pursuant to 28 U.S.C. § 1915A.

### BACKGROUND

The following allegations from plaintiff's complaint are accepted as true for purposes of the Court's initial review. Plaintiff has suffered from eye pain and blurred vision with flashes of light for two years. Doc. #1 at 3 (¶ 6). In September 2015, plaintiff submitted a request to the medical department at Cheshire Correctional to address these issues. *Id*. at 3 (¶ 7). Dr. Ruiz, a doctor stationed at Cheshire Correctional, then submitted a request to the Utilization Review Committee seeking approval for plaintiff to be seen by a specialist. *Id*. at 3 (¶ 9). The Utilization Review Committee decided to send plaintiff to the ophthalmology department at the University of Connecticut hospital. *Ibid*.

On January 5, 2016, an ophthalmologist at the University of Connecticut diagnosed

plaintiff with cataracts and scheduled him for surgery. *Id*. at 3 (¶ 10). On February 8, 2016,

plaintiff underwent surgery, consisting of a lens implant in his right eye. *Id*. at 3 (¶ 11). Plaintiff

had a follow-up visit the next day with the surgeon, Dr. Ehlers. At this visit, plaintiff complained

of extreme pain. He received prescriptions for various eye drops, ibuprofen, and Prilosec for pain

and sickness. *Id*. at 3–4 (¶¶ 12–14), 15.

When inmates return from outside medical visits, they report to the medical unit at

Cheshire Correctional to discuss any orders or prescriptions issued by the consulting physicians.

*Id*. at 4 (¶ 15). On February 9, 2016, after returning from his follow-up visit with Dr. Ehlers,

plaintiff reported to the medical unit and met with defendant Wilson. He gave defendant Wilson

the paperwork and prescriptions provided by Dr. Ehlers and had a brief conversation with her

before returning to his housing unit. *Id*. at 4 (¶ 16). Defendant Wilson was responsible for

submitting the prescriptions to the pharmacy. *Id*. at 6 (¶ 29).

On February 10, 2016, plaintiff returned to the hospital for another follow-up

appointment, complaining of pounding pain behind his eye. He was prescribed another eye drop.

*Id*. at 4 (¶ 17). On February 16, 2016, plaintiff had another follow-up visit with Dr. Ehlers. *Ibid.*

Plaintiff told Dr. Ehlers that some of the pain had subsided but that he was experiencing blurred

and hazy vision and a gritty feeling in his eye. *Id*. at 4 (¶ 19). Plaintiff was again prescribed eye

drops. *Id*. at 5 (¶ 20), 18.

On March 24, 2016, at another appointment with Dr. Ehlers, plaintiff complained of hazy

vision and sensitivity to light, which caused discomfort and headaches. *Id*. at 5 (¶ 21). Dr. Ehlers

prescribed special glasses to address these conditions. *Ibid.* When he returned to Cheshire

Correctional, plaintiff reported to the medical unit and met with defendant Wilson. At this

meeting, defendant Wilson allegedly tore up and destroyed the prescription for special glasses

and told plaintiff he would not receive the glasses. She did not provide a reason. *Id.* at 5 (¶¶ 23–26). Plaintiff also never received Prilosec, which had been prescribed for sickness resulting from pain medication. *Id.* at 6 (¶ 28).

On July 12, 2016, after writing several requests to the medical unit complaining of severe pain, headaches, and light sensitivity, plaintiff submitted a grievance seeking a health service review, requesting the special glasses that he had not received, and requesting surgery to correct his hazy vision. *Id.* at 6 (¶ 30), 20–21.

On August 4, 2016, defendant Ruiz submitted a request to the Utilization Review Committee for a YAG laser treatment to correct plaintiff's hazy vision. *Id.* at 6 (¶ 32). On August 9, 2016, plaintiff submitted another grievance seeking a health service review and requesting the special glasses. *Id.* at 6 (¶ 32), 23–24. Plaintiff never received the special glasses. *Id.* at 6–7 (¶ 33).

On September 14, 2016, plaintiff had another appointment with Dr. Ehlers. Dr. Ehlers requested an evaluation for YAG laser treatment and prescribed artificial tears. *Id.* at 7 (¶¶ 34–35). Upon returning to the correctional facility, plaintiff submitted his paperwork and the prescription for artificial tears to the medical unit. Plaintiff never received the artificial tears. *Id.* at 7 (¶ 37).

On November 15, 2016, plaintiff was called to the medical unit to have blood drawn, which is standard policy whenever an inmate is scheduled for surgery. *Id.* at 7–8 (¶¶ 38–39). The following day, defendant Wilson called plaintiff to the medical unit and informed him that she had cancelled the surgery. Ignoring Dr. Ehlers' recommendation, defendant Wilson told plaintiff that before any surgery could be performed, he had to have someone at the University of Connecticut determine whether the surgery was medically necessary. Ultimately, plaintiff

3

underwent the YAG laser surgery. *Id.* at 8 (¶¶ 41–43).

The lights in the correctional facility are on from 5:30 a.m. until 11:00 p.m. Although plaintiff can turn off the light in his cell, daylight still enters through the window to the outdoors and the window in the cell door. Inmates are forbidden from blocking the windows or hanging anything from the bunk to block the light. As a result, plaintiff constantly experiences debilitating pain from the light. The prescribed glasses would have allowed plaintiff to block the light, alleviating his pain. *Id.* at 9–10 (¶¶ 50–54).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

As the Supreme Court has made clear, "a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A deliberate indifference claim has two component requirements. The first requirement is objective: the alleged deprivation must be serious. The

4

second requirement is subjective: the charged officials must act with a subjectively reckless state of mind in their denial of medical care. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).

Plaintiff has experienced severe eye pain, headaches, and impaired vision; he alleges that these conditions were exacerbated because of delays in treatment and because he was deprived of the special glasses and artificial tears that were prescribed to him. Plaintiff's allegations constitute a serious medical need sufficient to meet for initial pleading purposes the objective component of the deliberate indifference test. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (need for corrective eyeglasses was sufficiently serious medical need, where glasses were necessary to correct double vision and loss of depth perception); *Madera v. Ezekwe*, 2013 WL 6231799, at *10 (E.D.N.Y. 2013) (impaired vision that plaintiff suffered while surgeries were delayed was sufficiently serious medical need); *Davidson v. Scully*, 155 F. Supp. 2d 77, 87 (S.D.N.Y. 2001) (noting that where vision will degenerate in the absence of corrective glasses, need for vision correction can be a serious medical need).

With respect to the subjective component of deliberate indifference, plaintiff alleges that defendant Wilson failed to comply with prescribed treatment by destroying his prescription for special glasses and by failing to fulfill the prescription for artificial tears. Failure to comply with prescribed treatment can constitute deliberate indifference to a serious medical need. *See Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) (failure of medical staff to comply with physician's orders resulted in improper treatment to support deliberate indifference claim; "[i]t is clear . . . that a constitutional claim is stated when prison officials intentionally deny access to medical care or interfere with prescribed treatment."). The claim against defendant Wilson for deliberate indifference to a serious medical need will therefore proceed.

Although plaintiff includes Dr. Ruiz in his claims for failure to ensure that he received prescribed treatments and medications, he alleges no facts suggesting that Dr. Ruiz was aware that these items had not been provided or that other accommodations for light sensitivity might be required. Plaintiff alleges that defendant Ruiz submitted the required Utilization Review Committee requests to enable him to have the initial cataract surgery and the YAG laser procedure. Absent allegations that Dr. Ruiz intentionally denied plaintiff access to medical care or interfered with the prescribed treatment, plaintiff's complaint fails to demonstrate the subjective component of the deliberate indifference standard as to Dr. Ruiz. The claim against Dr. Ruiz is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, the complaint requests "a preliminary and permanent injunction ordering the defendants to fill the perscription [sic] for special glasses, as well as the eye drops, and to be seen by an outside ophthalmologist." Doc. #1 at 12 (¶ 61). The Court construes this request as a motion for a preliminary injunction. Defendant shall respond to the motion and address why the requested relief should not be granted.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1)    The complaint will proceed on the deliberate indifference claim against defendant Wilson. Plaintiff's claim against defendant Ruiz is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). If plaintiff wishes to replead the claim against defendant Ruiz, he may file an amended complaint within thirty (30) days of the date of this order. Any amended complaint should include all of plaintiff's claims that he wishes to pursue (*e.g.*, the amended complaint should also include the claim against defendant Wilson).

(2)      **The Clerk shall** verify the current work address of defendant Wilson with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to her at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)      **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendant Wilson in her official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4)      **The Clerk shall** send written notice to plaintiff of the status of this action, along with a copy of this Order.

(5)      **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6)      **On or before February 9, 2017**, defendant shall file a response to plaintiff's request for a preliminary injunction, showing why the relief requested should not be granted.

(7)      Defendant shall file her response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If she chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claim recited above. She also may include any and all additional defenses permitted by the Federal Rules.

(8)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(9)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(10)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(12)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

It is so ordered.

Dated at New Haven this 9th day of January 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

8