# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ANDRES J. ACEVEDO,
    *Plaintiff*,

v.

DEBBIE WILSON, *et al*.,
    *Defendants*.

No. 3:16-cv-01967 (JAM)

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Andres Acevedo is a prisoner in the custody of the Connecticut Department of Correction (DOC). Plaintiff has suffered significant eye ailments that have required extensive treatment. He alleges that DOC Nurse Debra Wilson failed to comply with prescribed treatment by destroying plaintiff's prescription for special glasses, failing to fulfill prescriptions for Prilosec and artificial tears, and purposefully delaying his laser surgery. Plaintiff commenced this *pro se* action under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendant Wilson is the only remaining defendant in this case; the Court has previously dismissed plaintiff's claims against co-defendant Dr. Ruiz. Doc. #7. For the reasons that follow, I will grant defendant's unopposed motion for summary judgment.

### BACKGROUND

The following facts are based on the parties' submissions and are viewed in the light most favorable to plaintiff.[1] Plaintiff has suffered from eye pain and blurred vision with flashes of light for several years. Doc. #1 at 3. In August of 2015, plaintiff had an optometry consultation at Cheshire Correctional Institution (CCI), which revealed a cataract that was causing significant

---

[1] Many of the facts in this section are derived from plaintiff's medical records, which plaintiff certified as authentic. Doc. #38 at 2.

1

loss of vision. Doc. #38 at 112. On November 6, 2015, plaintiff had an ophthalmology consultation with Dr. William Ehlers at the University of Connecticut to address the cataract. *Id.* at 97. Dr. Ehlers recommended surgery, which was approved by the prison's Utilization Review Committee (URC) on November 19. *Id.* at 99. The URC is a panel that determines whether an individual inmate's medical condition warrants treatment beyond what is provided at a correctional facility. After an initial delay due to equipment failures, Dr. Ehlers performed the surgery on February 8, 2016. *Id.* at 83. At a follow-up appointment on February 9, Dr. Ehlers prescribed three types of eye drops, Prilosec, and ibuprofen. *Id.* at 78. Medical personnel at CCI scanned and submitted these prescriptions to the pharmacy the same day. *Id.* at 17–18. Although plaintiff complains that he never received the prescribed Prilosec, his medical records show that he received a comparable medication, Protonix. *Id.* at 17.

Plaintiff continued to experience significant pain and had a series of follow-up medical visits at CCI and at the University of Connecticut with Dr. Ehlers. At a follow-up visit on March 24, 2016, Dr. Ehlers prescribed glasses for plaintiff. Plaintiff alleges that when he returned to CCI, he reported to the medical unit and met with defendant Wilson. Doc. #1 at 5. At this meeting, Wilson allegedly tore up and destroyed the prescription for special glasses and told plaintiff he would not receive the glasses. She did not provide a reason. *Ibid.*

For her part, Wilson maintains that this meeting did not occur and that she did not rip up the prescription or deny plaintiff his glasses. Doc. #37-3 at 5. Wilson serves as the URC case manager who prepares inmates for medical treatments approved by the URC. Doc. #37-3 at 3. She is not responsible for executing prescriptions and does not directly interact with the pharmacy. *Id.* at 6. Additionally, the March 24 prescription from Dr. Ehlers is recorded intact in

plaintiff's medical record. Doc. #38 at 73. It appears that this prescription was never filled and that plaintiff did not receive his glasses at the time this suit was filed.[2]

Plaintiff continued to experience headaches and sensitivity to light, as well as hazy vision. On July 12, 2016, he filed a request to the medical unit seeking the special glasses that he had not received and requesting surgery to correct his hazy vision. Doc. #1 at 6, 20–21. On August 4, plaintiff had an optometry consultation. Doc. #38 at 67. The consulting doctor recommended glasses and a further appointment at the University of Connecticut for YAG laser surgery. *Ibid.* The consulting doctor submitted a request to the URC for laser surgery, which was approved on August 12. *Id.* at 65, 68. Three days earlier, on August 9, 2016, plaintiff submitted another grievance seeking a health service review and requesting the special glasses. Doc. #1 at 6–7 (¶ 33), 23–24.

On September 14, 2016, plaintiff returned for another appointment with Dr. Ehlers. *Id.* at 64. Dr. Ehlers prescribed artificial tears and recommended scheduling the laser surgery. *Ibid.* Upon returning to the correctional facility, plaintiff submitted his paperwork and the prescription for artificial tears to the medical unit. Plaintiff alleges he never received the artificial tears. *Id.* at 7 (¶ 37). However, the medical record shows that the prescription for artificial tears was scanned and submitted to the pharmacy on September 14. Doc. #38 at 10. Additionally, the intake nurse noted in the medical record that plaintiff was "given artifices tears and instructions" upon returning from his appointment. *Id.* at 134. Furthermore, plaintiff's medication administration record indicates that plaintiff started using artificial tears on September 14. *Id.* at 211.

Immediately following the September 14 appointment, a doctor at CCI submitted a request to the URC to schedule the laser surgery; the request was approved on September 21. *Id.*

---

[2] Plaintiff received his prescription eyeglasses during the course of this litigation. Doc. #19 at 1.

at 57. On November 2, plaintiff was informed by medical staff that he would have a follow-up visit with ophthalmology later that month. *Id.* at 132. On November 15, plaintiff had blood drawn at the medical unit in preparation for surgery. Doc. #1. at 7–8 (¶¶ 38–40); Doc. #38 at 44–46 (laboratory results).

Plaintiff met with Wilson shortly thereafter, although the parties provide differing accounts of the meeting. Plaintiff alleges that Wilson informed him that she had cancelled the surgery and told him that before any surgery could be performed, he had to have someone at the University of Connecticut determine whether the surgery was medically necessary. Doc. #1 at 8 (¶¶ 41–42). However, according to Wilson, she met with plaintiff on November 15 to discuss the appointment with Dr. Ehlers at which the laser surgery would be performed, as approved by the URC. Doc. #38 at 61. The surgery took place on November 22, 2016. Doc. #38 at 59.

At the time this lawsuit was filed, plaintiff alleged that he still had not received his special glasses and continued to suffer as a result. The Court previously entered an injunction to require that plaintiff be provided with glasses and other eye care. Doc. #17.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. A court's role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute

to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

Plaintiff has not filed any objection or opposition to defendant's motion for summary judgment. In *Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014), the Second Circuit instructed that "when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment," but "must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id*. at 197. Here, because plaintiff has filed a verified complaint, the Court will consider the allegations of plaintiff's complaint as akin to an affidavit submitted by plaintiff in opposition to summary judgment. *See, e.g.*, *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995).

Plaintiff contends that Wilson was deliberately indifferent to his serious medical needs. It is well established that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A deliberate indifference claim has two elements. The first element is objective: the alleged deprivation must be serious. The second requirement is subjective: the charged officials must act with a subjectively reckless state of mind in their denial of medical care. *See Spavone v. New York State Dept. of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). If a plaintiff does not allege that a defendant acted purposefully or maliciously to harm him, then a plaintiff must at the least allege that a defendant has acted with deliberate indifference—that is, with awareness that plaintiff would suffer serious harm as a result of the defendant's actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). By contrast, allegations of ordinary medical malpractice or negligence do not

allege deliberate indifference of a constitutional magnitude and do not suffice to allege a cognizable claim for a violation of the Eighth Amendment. *Ibid.*; *see also Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

Plaintiff alleges that Wilson was deliberately indifferent to his serious medical needs because she failed to comply with prescribed treatment by destroying plaintiff's prescription for special glasses, failing to fulfill his prescriptions for Prilosec and artificial tears, and purposefully delaying his laser surgery. All of these claims, however, are belied by plaintiff's medical records. First, the medical record shows that plaintiff's prescription was not ripped up, as the prescription is preserved intact in his medical record. Doc. #38 at 73. Although it appears that this prescription was never filled, there is no evidence in the record that Wilson knew about or was responsible for filling this prescription. Second, although plaintiff complains he was never provided with Prilosec, it appears that he was provided with Protonix, which is a comparable medication. *Id.* at 17; *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("mere disagreement over the proper treatment does not create a constitutional claim"). There is also ample evidence in the record that plaintiff received the prescribed artificial tears. *Id.* at 10, 134, 211. Finally, even assuming plaintiff's account of the November meeting with Wilson is accurate, there is no dispute that plaintiff received laser surgery on November 22 as scheduled. As such, there is no evidence to support plaintiff's allegations that Wilson interfered with or delayed his surgery.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Vega v. Rell*, 611 F. App'x. 22, 25-26 (2d Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation

marks omitted). In *Vega*, the Second Circuit affirmed a grant of summary judgment dismissing a prisoner's deliberate-indifference-to-medical-needs claim where the prisoner's account was "undercut" by "uncontroverted medical records." *Id.* at 25. Here, the medical record shows that plaintiff received the medication and treatment he was prescribed. Thus, any claim that Wilson destroyed his prescriptions, delayed his surgery, or denied him his glasses, artificial tears, or other medication, is contradicted by the record.

## CONCLUSION

For the foregoing reasons, defendant's unopposed motion for summary judgment (Doc. #37) is GRANTED.

The Clerk is directed to close this case.

It is so ordered.

Dated at New Haven this 28th day of December 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge